# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AVIATION TRAINING DEVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-CV-0215-CVE-FHM |
| ) | |
| FLIGHTSAFETY SERVICES ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court are FlightSafety Services Corporation's Partial Motion to Dismiss Counts II, III, IV, and V of Plaintiff's Amended Complaint for Failing to State a Claim Upon Which Relief May Be Granted (Dkt. # 18), and Plaintiff's Application for Leave to File Second Amended Complaint (Dkt. # 29). Defendant FlightSafety Services Corporation (FSSC) asks the Court to dismiss all of plaintiff's claims other than its breach of contract claim for unpaid invoices (count I), because defendant was permitted to terminate the parties' contract for convenience. Plaintiff Aviation Training Devices, Inc. (ATD) responds that FSSC partially terminated the contract in bad faith, and ATD asserts that it has stated plausible claims for breach of contract and related equitable claims based on FSSC's termination for convenience.

## I.

Beginning in 2006, the United States Air Force (USAF) solicited bids to develop a new air tanker, which is an aircraft used to deliver fuel to other aircraft during flight, and the program was designated as KC-X. Dkt. # 16, at 2. In January 2011, the USAF selected Boeing's KC-46 Pegasus aircraft and awarded a development contract to Boeing, and Boeing was required to deliver an initial

installment of 18 aircraft by 2017. Id. In connection with production of the actual aircraft, the USAF solicited bids for an aircraft training system (ATS) for the KC-46 aircraft, and this included flight simulators and training equipment for boom operators. Id. at 2-3. The USAF required 13 fuselage trainers (FuT) and 26 boom operator trainers (BOT). Id. at 3.

FlightSafety International (FSI) is a New York corporation primarily engaged in the business of providing pilot training for commercial and military aircraft, and FSI's flight simulation systems division is located in Broken Arrow, Oklahoma. Id. at 3. FSSC is a subsidiary of FSI. Id. ATD has conducted business with FSI since 1996 and has designed flight simulators and trainers for several aircraft. Id. In 2012, FSSC sought bids from subcontractors for the development of fuselage and boom operator trainers for the KC-46 aircraft, and FSSC selected ATD's bid to develop training equipment for the USAF. Id. at 4. However, FSSC asked ATD to lower its bid for the initial development and production costs for the trainers, and ATD alleges that FSSC promised that it would award ATD subcontracts for additional trainers for the KC-46 to offset any losses. Id. at 4-5. ATD alleges that it agreed to lower its bid by over $8 million, even though it would lose money, and FSSC submitted a bid to the USAF for the development of the necessary training systems for the KC-46 aircraft. Id. at 5. In May 2013, the USAF awarded the contract to FSSC and those parties entered a prime contract. Id. ATD submitted statements of work to FSSC for the KC-46A fuselage trainers and the KC-46A boom operator trainers in July 2013, and the parties entered a fixed price subcontract on September 12, 2013. Id. The subcontract incorporated the statements of work by reference. Id. FSSC agreed to pay $13,738,627 for the construction of one fuselage trainer (FuT 1) and two boom operator trainers (BOT 1 and 2). Id.

ATD alleges that it had no ability to negotiate the terms of the subcontract due to a disparity in bargaining power between the parties. Id. Although not stated in the subcontract, ATD alleges that there was understanding between the parties that FSSC would award all future subcontracts for the construction of fuselage and boom operator trainers to ATD. Id. at 6. The subcontract includes the following provisions concerning any prior oral or written agreements:

1. Superseding Effect

   A. This Subcontract supersedes all written or oral agreements and constitutes the entire agreement between the parties hereto with respect to this Subcontract.

   B. All work performed by [ATD], actions taken, and payments made, if any, under any other prior written or oral agreements, with respect to this Subcontract, shall be deemed to be work performed, actions taken, or payments made under this Subcontract.

Dkt. # 18-1, at 3. The subcontract incorporates certain attached documents, including general provisions and special provisions. Id. at 11. FSSC's general provisions include an integration clause that states that "[t]his contract integrates, merges and supersedes all prior offers, negotiations, or agreements concerning the subject matter hereof and constitutes the entire agreement between the parties." Id. at 13. The special provisions include references to Federal Acquisition Regulation (FAR) contract clauses, and one of these clauses is titled "Termination for Convenience of the Government." Id. at 22. Under 48 C.F.R. § 52.249-02, "[t]he Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest." A notice of termination for convenience triggers a procedure under which the parties negotiate payment to the subcontractor for work already performed, and there is a dispute resolution procedure if the parties cannot agree on

the amount of the payment to the subcontractor. The general provisions included a separate termination for convenience clause stating that "[FSSC] may terminate the work under this contract, in whole or in part, at any time, and the parties agreed "[a]ctions between the parties shall be as established in [48 C.F.R. § 52.249-2.]" Dkt. # 18-1, at 17.

ATD alleges that FSSC failed to furnish necessary technical data that ATD needed to design and build the trainers, and FSSC allegedly told ATD that it would have to reverse engineer certain specifications due to missing technical data. Id. at 7. On August 26 and 27, 2014, the parties participated in a critical design review (CDR) "to establish a design baseline configuration for the devices." Id. At the CDR, FSSC allegedly told the USAF that FSSC had all of the data that it needed to build the trainers, but ATD claims that this data was never provided to it by FSSC. Id. On November 15, 2015, FSSC modified the subcontract to add a second fuselage trainer (FuT 2) and a third and fourth boom operator trainer (BOT 3 and 4) and increased the contract price to $25,668,096. Id. The parties continued to dispute whether FSSC was contractually obligated to provide additional data to ATD in order for ATD to complete its work, and FSSC took the position that subcontract did not require FSSC to provide the data that ATD was requesting. Id. at 8.

On December 22, 2016, FSSC sent a notice of termination of convenience to ATD for FuT 2 and FSSC requested that ATD provide a settlement proposal to FSSC. Id. at 9. The parties exchanged e-mails to arrange for a preliminary inventory of FuT 2, and the parties disputed whether ATD or FSSC would perform an inventory of electronic components in the possession of ATD's subcontactor Shen Te. Id. at 8-9. FSSC ultimately conducted the electronic inventory at Shen Te's facility, and ATD claims that FSSC's actions damaged ATD's relationship with Shen Te. Id. at 9. FSSC notified ATD that it would have to submit bids for the subcontracts to build any additional

4

FuT or BOT devices, and ATD claims that this was a breach of the parties' understanding that all future contracts to build FuT and BOT devices would be awarded to ATD. Id. at 10. ATD alleges that FSSC had no intention of awarding any future contracts to ATD, and ATD was simply attempting to obtain the devices at a lower cost from a different supplier. Id. FSSC declined to award any future subcontracts to ATD, even though ATD claims that it was the lowest qualified bidder. Id. at 11. ATD also alleges that FSSC unilaterally "de-scoped"[1] the subcontract for FuT 1 by eliminating certain tasks or reducing certain requirements, and ATD alleges that FSSC intended to locate a cheaper supplier for the tasks eliminated from the subcontract. Id. at 12. On December 5, 2017, ATD shipped the completed FuT 1 device to FSSC and submitted invoices totaling $2,085,583, and ATD claims that its invoices have not been paid. Id. The USAF accepted the FuT 1 device, but FSSC still declined to pay the invoices submitted by ATD. Id. at 13. In addition, ATD alleges that FSSC has demanded reductions in payment for FSSC's labor and material costs. Id.

On April 25, 2019, ATD filed this case alleging two breach of contract claims (counts I and II)[2] and claims of breach of duty of good faith and fair dealing (count III), unjust enrichment (count IV), and promissory estoppel (count V). ATD filed an amended complaint (Dkt. # 19) alleging the same claims but including additional factual allegations. FSSC has filed a motion to dismiss counts II, III, IV, and V of the amended complaint. Dkt. # 18. ATD requests leave to file a second amended

---

[1] Defendant seeks dismissal of any breach of contract claim based on "de-scoping" or the "changes" clause of the subcontract. Dkt. # 18, at 27. The Court has reviewed the amended complaint and finds that it cannot reasonably be construed to assert such a claim, and the Court will not consider whether FSSC's "de-scoping" of the subcontract was permissible.

[2] The breach of contract claim alleged in count I appears to related to unpaid invoices as to FuT 1, and count II relates to FSSC's allegedly improper use of the termination for convenience clause as to FuT 2.

5

complaint to "clarify" its existing claims, and FSSC opposes ATD's motion to amend. Dkt. ## 29, 31.

## II.

ATD requests leave to file a second amended complaint to "clarify" its claims and ATD has attached a copy of its proposed second amended complaint. Dkt. # 29. FSSC responds that ATD has already filed an amended complaint revising its claims, and it appears that the purpose of the proposed amendment is to avoid dismissal of count II. Dkt. # 31. The amendments contained in the proposed second amended complaint relate only to count II, and it appears that the primary purpose of the amendment would be to include additional allegations concerning FSSC's bad faith in invoking the termination for convenience clause. Dkt. # 29-1; Dkt. # 29-2.

Under Fed. R. Civ. P. 15(a)(2), after the opposing party has served a responsive pleading, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Minter v. Prime Equipment Co., 451 F.3d 1196, 1204 (10th Cir. 2006). The decision to grant leave to amend is within the discretion of the district court but, when leave is sought, it should be "freely given when justice so requires." Bradley v.Val-Majias, 379 F.3d 892, 900-91 (10th Cir. 2004). Leave to amend may be denied if the proposed amendment would be futile and would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Services, Inc., 175 F.3d 848, 859 (10th Cir. 1999). Denial of a motion to amend may also be appropriate if the moving party unduly delayed when seeking leave to amend and has no adequate explanation for the delay. Minter, 451 F.3d at 1206. "In the Tenth Circuit, untimeliness alone is an adequate reason to refuse leave to amend." Duncan v. Manager, Dep't of Safety, City and County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005).

ATD simply states that it seeks leave to "clarify" its claims, but ATD makes no attempt to explain why it could not have included the new allegations in its original or amended complaints. The Court has reviewed the proposed second amended complaint and it is apparent that the purpose of the amendment would be to incorporate arguments made in response to FSSC's motion to dismiss count II of the amended complaint. ATD has wholly failed to explain why the allegations could not have been included in a prior version of the complaint, and the proposed amendments to count II are not based on new evidence that was previously unavailable to ATD. The proposed amendments to count II will have no bearing on the Court's ruling on the motion to dismiss, and ATD's motion to amend (Dkt. # 29) is denied as untimely.

### III.

FSSC asks the Court to dismiss counts II, III, IV, and V of the amended complaint under Rule 12(b)(6). As to count II, FSSC argues that it was permitted to terminate the subcontract for convenience at any time, even without a request to cancel the contract by the government, and the termination for convenience clause was supported by adequate consideration. FSSC relies on the same argument to support its argument that its partial termination of the subcontract could not have breached the covenant of good faith and fair dealing if it was specifically permitted to terminate the contract for convenience. Finally, FSSC argues that ATD is not permitted to bring equitable claims when the parties had an express contract, and ATD's claims for unjust enrichment and promissory estoppel are barred by the integration clauses of the subcontract.

### A.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is

properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

## B.

FSSC argues that count II of the amended complaint should be dismissed because the subcontract specifically permitted FSSC to terminate the contract for convenience, even without a request by the government to cancel the subcontract. Dkt. # 18, at 14. FSSC also claims that the facts alleged in the amended complaint would not support an inference that it acted in bad faith by terminating the subcontract. Id. at 19. ATD responds that a private contractor does not have

8

unlimited authority to terminate a contract for convenience and, if FSSC had limited authority to terminate the contract for convenience, FSSC acted in bad faith by partially terminating the subcontract. Dkt. # 22, at 9-13. ATD withdraws its argument that the termination for convenience provision is illusory or not supported by adequate consideration. Id. at 7 n.2.

The general provisions of the subcontract include a termination for convenience provision that provides:

> Buyer may terminate the work under the contract, in whole or in part, at any time. Actions between the parties shall be established in Title 48 CFR Chapter 1 Subpart 49 (FAR 52.249-2). For the purposes of interpreting the aforementioned language, all references to "Government" or "Contracting Officer" shall be deemed to mean "Buyer". All references to the time allowed for submittal of termination settlement proposal shall be changed to 180 days. All references to appeal under the Disputes clause (FAR 52.233-1) are hereby deleted.

Dkt. # 18-1, at 17. Under 48 C.F.R. § 52.249-02, "[t]he Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest." The parties agreed that the contract would be "governed by, subject to, and construed according to the laws of the State of Colorado," but "[f]ederal [l]aw shall apply in lieu of State Law where required due to incorporation of Federal Regulations elsewhere in this Contract." Dkt. # 18-1, at 19.

The Court will initially consider whether Colorado law or federal common law should be applied to resolve the parties arguments as to count II. ATD argues that the subcontract expressly incorporates federal regulations in the termination for convenience provision and federal procurement law should be applied. FSSC's position is less clear. In a footnote, FSSC states that federal contracts are governed by federal procurement law and "the parties elected to be bound by this law regarding the interpretation and application of contract terms that are derived from terms

9

in [FSSC's] prime contract with the Government." Dkt. # 18, at 11. However, FSSC relies heavily on Colorado law concerning the interpretation of contracts in general, and FSSC cites both Colorado and federal law in support of its argument to dismiss count II of the amended complaint. Id. at 14-19. The contract provision at issue expressly references federal regulations and states that FSSC's right to terminate the contract is governed by 48 C.F.R. § 52.249-2. The parties further agreed that federal law would apply in lieu of Colorado law to the extent that the parties incorporated federal regulations into the contract. Dkt. # 18-1, at 19. There is a well-defined body of federal law concerning the enforcement of termination for convenience clauses in federal contracts, and the Colorado law cited by defendant is general in nature and not specifically related to the type of contractual provision at issue in this case. The Court finds that the choice of law provision in the subcontract requires that federal law be applied to resolve the parties's dispute concerning the validity of FSSC's decision to partially terminate the subcontract for convenience.

The parties have not cited any binding or persuasive authority as to whether a private party such as FSSC has the same right to terminate a contract for convenience as the federal government and, for the purpose of this Opinion and Order, the Court will assume that private parties have the same rights and obligations as the federal government in terminating a contract for convenience. The leading case on the interpretation of termination for convenience clauses is Torncello v. United States, 681 F.2d 756 (Ct. Cl. 1982), in which the United States Court of Claims examined the history of the termination for convenience clause and noted the valuable place that such provisions have in federal procurement law. Summarizing earlier cases, the court found that "[t]he message in those cases is clear that termination for convenience was to allocate the risk of a change in the circumstances of the parties." Id. at 766. Allowing the federal government to walk away from a

contract merely to secure a better bargain after it had already entered a contract could render the consideration for a contract illusory, and "the government may not use the standard termination for convenience clause to dishonor, with impunity, its contractual obligations." Id. at 772. In Torncello, the Court rejected the government's argument that it could terminate a contract for convenience to accept a lower bid for the same work, because the evidence established that the government knew about the lower bid when it entered the contract with the plaintiff. Id. There had been no change in circumstances or in the expectations of the parties that would justify allowing the government to simply walk away from the contract, and termination for convenience was not permitted to allow the government to get the same goods or services for a cheaper price. Id.

In a subsequent case, the United States Court of Appeals for the Federal Circuit explained that changes in federal procurement law addressed concerns that the federal government could terminate a contract simply to obtain a better price, and termination for convenience will be permitted as long as the termination is not made in bad faith. Krygoski Constr. Co., Inc. v. United States, 94 F.3d 1537, 1544 (Ct. Cl. 1996). The holding of Torncello has been limited to situations in which the government had no intention of fulfilling the promises made in the contract, and termination of a contract in the interest of full and open competition will almost always be permitted. Id. at 1545. Recent cases have given the government broad latitude to terminate a contract for convenience, and a contracting officer's decision to invoke a termination for convenience clause will be upheld absent a clear showing of bad faith or abuse of discretion. Bowles v. United States, 144 Fed. Cl. 240, 250 (Ct. Cl. 2019); Gulf Group Gen. Enter. Co. W.L.L. v. United States, 114 Fed. Cl. 258, 361 (Ct. Cl. 2013). That does not mean that the government's power to terminate a contract for convenience is unlimited, and the contracting officer may not terminate a contract for

convenience simply to get a better bargain or may not enter into a contract with no intention of upholding it. Id. at 362.

FSSC did not wholly terminate the subcontract for convenience but, instead, notified ATD that it was terminating for convenience the subcontract requirement that ATD build a second FuT device. Dkt. # 16, at 9. FSSC demanded that ATD submit a termination settlement proposal, and a dispute arose concerning the scheduling of a preliminary inventory required under termination procedures. Id. ATD contended that it would likely have already completed the second FuT device if FSSC had not impeded ATD's performance by failing to provide the necessary data. Id. ATD alleges that the parties have not reached a settlement as to the partial termination for convenience, and ATD claims that FSSC has unilaterally reduced the subcontract for amounts owed to ATD for its work on FuT # 2. Id. at 13. ATD claims that FSSC acted in bad faith by partially terminating the subcontract for convenience, because FSSC's true motive was to obtain the same goods at a lower cost from a different supplier. Id. at 15. ATD also asserts that the FSSC's actions suggest that it never had any intention of honoring the parties' agreement as to the completion of a second FuT device. Id.

The Court finds that ATD has adequately alleged that FSSC acted in bad faith by partially terminating the subcontract for convenience, and FSSC's motion to dismiss count II of the amended complaint should be denied. The amended complaint alleges that FSSC failed to provide necessary data to ATD that prevented ATD from completing its work on FuT # 2, and then FSSC invoked the termination for convenience clause as to FuT # 2 either because FSSC never had any intention of honoring the contract or to obtain a lower cost supplier. These allegations are sufficient at the pleading stage to state a claim for breach of contract due to improper use of a termination for

12

convenience clause. FSSC argues that ATD must allege in detail that FSSC acted with the specific intent to injure ATD by terminating the contract for convenience. Dkt. # 27, at 7. However, the "intent to injure" standard is based on an unpublished decision from the Court of Appeals for the Federal Circuit, and this does not appear to be standard used by courts to determine if the government acted in bad faith by terminating a contract for convenience. The "intent to injure" standard comes from a decision that predates Torncello and Krygoski and, in any event, this simply appears to be a different way of stating that a plaintiff has a high burden of proof to establish that the government acted in bad faith. This case is at the pleading stage and plaintiff is not required to come forward with proof, nor does a heightened pleading standard apply to this issue. The Court notes that there is also a separate issue as to the parties' failure to reach a settlement following the termination for convenience, and this issue could independently support a claim for a breach of contract. ATD alleges that the parties have not reached a settlement and that it disputes some of the deductions proposed by FSSC, and the parties' alleged failure to come to an agreement as to the compensation due to ATD as part of the termination of convenience would also preclude dismissal of count II.

## C.

FSSC argues that it had the right to partially terminate the subcontract for convenience, and it could not possibly have violated the covenant of good faith and fair dealing. Dkt. # 18, at 20. ATD responds that the covenant of good faith and fair dealing applies to government contracts, and FSSC could be found to be in breach of this covenant based on the allegations of the amended complaint. Dkt. # 22, at 14-15.

13

FSSC's argument to dismiss this claim is based on its assertion that it had the express contractual right to terminate the subcontract for convenience, and that it could not have acted in bad faith by following the express terms of the parties' agreement. The Court has already determined that plaintiff has adequately alleged that FSSC partially terminated the subcontract for an improper purpose. ATD cites Centex Corp. v. United States, 395 F.3 1283 (Fed. Cir. 2005), which states that the covenant of good faith and fair dealing "applies to the government just as it does to private parties." Id. at 1304. The covenant of good faith and fair dealing "imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." Id. As recently as 2019, the Court of Appeals for the Federal Circuit has affirmed that federal law imposes an obligation of good faith and fair dealing as long as the claim is based on a specific duty imposed by the parties' contract. Dobyns v. United States, 915 F.3d 733, 740-41 (Fed. Cir. 2019). The parties also cite Colorado law concerning the covenant of good faith and fair dealing, and the Court can find no significant distinction between federal and Colorado law on the parameters of a claim for breach of the covenant of good faith and fair dealing. See Armed Forces Bank, N.A. v. Hicks, 365 P.3d 378, 389 (Colo. App. 2014); Amoco Oil Co. v. Ervin, 908 P.2d 493, 498 (Colo. 1995).

The Court finds that plaintiff's claim for breach of the covenant of good faith and fair dealing should not be dismissed, because federal common law recognizes this claim and plaintiff has adequately alleged that defendant exercised its right to terminate the subcontract for convenience in bad faith. However, plaintiff is advised that the Court may find this claim to be superfluous to its breach of contract claim if it based on the same contractual provision and there are no additional

remedies available for breach of the covenant of good faith and fair dealing.  See Arrow Electronics, Inc. v. Deco Lighting, Inc., 2019 WL 5095739 (D. Colo. Aug. 9, 2019).

**D.**

FSSC asks the Court to dismiss ATD's claims for unjust enrichment and promissory estoppel, because the parties had an express contract and ATD may not pursue equitable claims for relief that would contradict the terms of the parties' contract.  Dkt. # 18, at 22-25.  ATD responds that the relief sought in its claims for unjust enrichment and promissory estoppel is outside the scope of the parties' contract, and the existence of an express contract does not prohibit ATD from seeking extra-contractual remedies.[3]  Dkt. # 22, at 21-23.

The basis for ATD's unjust enrichment and promissory estoppel is its contention that it was required to make a "risky" bid to obtain the initial subcontract, because FSSC asked ATD to lower its initial bid in order to obtain the subcontract.  Dkt. # 16, at 17.  In exchange for lowering its bid, ATD claims that FSSC "made assurances to ATD that it would recoup its losses from the earlier devices with efficiencies in the later devices."  Id. at 18.  The "assurances" made by FSSC allegedly included a promise to award subcontracts for all future devices on the FC-46 project.  Id.  ATD claims that it incurred significant expenses to develop the material, parts, and software needed to complete the devices, and it believed that it would recover its initial expenses when it received subcontracts for future devices.  Id.  However, FSSC did not award future subcontracts to ATD, and

---

[3] ATD argues that Oklahoma law should be applied to its unjust enrichment and promissory estoppel claims, because the choice of law provision in the subcontract governs only claims concerning the parties' rights and obligations under the subcontract. Dkt. # 22, at 16-17. However, ATD concludes this argument by stating that there is no substantial difference between Oklahoma and Colorado law, and the Court finds that the choice of law issue has no bearing on its ruling on FSSC's motion to dismiss.

15

ATD claims that FSSC has been unjustly enriched by having ATD develop the necessary devices at a reduced cost. Id. ATD also claims that it has been financially harmed due to its detrimental reliance on FSSC's assurance that future subcontracts would be award to ATD. Id. at 18.

FSSC argues that the parties had an express contract, and ATD cannot rely on theories of unjust enrichment or promissory estoppel to obtain relief outside of the scope of the contract. Dkt. # 18, at 22-24. FSSC relies on Colorado law to support its argument that a party cannot recover for unjust enrichment or promissory estoppel when the parties' relationship is governed by an express contract. Interbank Investments, LLC v. Eagle River Water and Sanitation Dist., 77 P.3d. 814, 815 (Colo. App. 2003) ("In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract."); Wheat Ridge Urban Renewal Authority v. Cornerstone Group XXII, LLC, 176 P.3d 737 (Colo. 2007) ("Recovery on a theory of promissory estoppel is incompatible with the existence of an enforceable contract."). ATD responds that the subcontract covers different subject matter than the alleged promises that would support recovery for unjust enrichment or promssiory estoppel, and the existence of an express contract does not bar recovery under equitable theories. Dkt. # 22, at 20. ATD relies on Oklahoma law in support of its argument that it can proceed with equitable claims based on agreements outside the scope of the parties's subcontract. American Biomedical Group, Inc. v. Techtrol, Inc., 374 P.3d 820, 828 (Okla. 2016); BB & B Constr., Inc. v. Hogan, 17 F. App'x 850, 851 (10th Cir. Aug. 17, 2001).[4] ATD has alleged in the amended complaint that FSSC made "assurances" that it would all future contracts for FC-46

---

[4] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

devices to ATD, and no such agreement is contained in the parties' written contract. Thus, it is possible that ATD's unjust enrichment and promissory estoppel claims are based on a separate agreement that is not part of the express contract, and these claims would not automatically be precluded as a matter of law. The Court will separately consider whether ATD has adequately equitable claims that are separate and distinct from any agreements expressly contained in the parties' subcontract.

ATD's unjust enrichment and promissory estoppel claims are based on its allegation that FSSC promised to provide subcontracts for future devices in exchange for ATD's agreement to reduce its bid for the work contemplated by the subcontract. FSSC argues that any promises concerning the price to be paid by FSSC for the agreed-upon work fall within the scope of the subcontract, and FSSC notes that the parties expressly agreed that they had no other agreements or promises that were not contained in the subcontract. Dkt. # 18, at 22-26. The Court has reviewed the amended complaint and finds that the alleged promises or agreements forming the basis for ATD's unjust enrichment or promissory claims fall within the scope of the parties' written agreement. The alleged promise to provide future work relates directly to the amount that FSSC agreed to pay ATD in the subcontract, and ATD acknowledges that it was making a "risky" bid that could potentially cause financial loss. Dkt. # 16, at 17. The subcontract price was an integral part of the subcontract, and any agreements or promises concerning the subcontract price do not constitute separate agreements that could form the basis for equitable claims in this case. The subcontract also states that it "supersedes all written or oral agreements and constitutes the entire agreement between the parties hereto with respect to this Subcontract." Dkt. # 18-1, at 3. In other words, ATD expressly agreed that it was not relying on any promise or agreement not contained in

the parties' written agreement, because the subcontract was the entire agreement and any promise or agreement not contained in the subcontract was unenforceable. Any agreement concerning the price to be paid by FSSC for the work required by the subcontract needed to be in writing to be enforceable, and there is no dispute that FSSC did not agree in writing to award future subcontracts to ATD. ATD cannot use equitable claims to escape the terms of the parties' written agreement, and ATD's claims for unjust enrichment and promissory estoppel should be dismissed.

**IT IS THEREFORE ORDERED** that FlightSafety Services Corporation's Partial Motion to Dismiss Counts II, III, IV, and V of Plaintiff's Amended Complaint for Failing to State a Claim Upon Which Relief May Be Granted (Dkt. # 18) is **granted in part** and **denied in part**: the motion to dismiss is granted as to the dismissal of ATD's claims for unjust enrichment (count IV) and promissory estoppel (count V), but the motion is denied in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff's Application for Leave to File Second Amended Complaint (Dkt. # 29) is **denied**.

**DATED** this 18th day of February, 2020.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE