UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AVIATION TRAINING DEVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-CV-0215-CVE-FHM |
| ) | |
| FLIGHTSAFETY SERVICES ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court are Plaintiff's Second Application for Leave to File Second Amended Complaint (Dkt. # 50) and Plaintiff's Motion to Reconsider Court's Dismissal of Plaintiff's Claims for Unjust Enrichment and Promissory Estoppel (Dkt. # 51). Plaintiff Aviation Training Devices, Inc. (ATD) requests leave to file a second amended complaint adding claims concerning defendant FlightSafety Services Corporation's (FSSC) alleged knowledge that it would have difficulty in obtaining data necessary to complete the work required by the parties' subcontract. Dkt. # 50. ATD also asks the Court to reconsider its decision to dismiss ATD's claims of unjust enrichment and promissory estoppel. Dkt. # 51.

**I.**

ATD filed this case alleging claims arising out of a subcontract with FSSC on a project for the United States Air Force (USAF).[1] The project involved the construction of a new air tanker

---

[1] The Court will not offer a complete summary of the facts alleged by ATD and will summarize only those facts relevant to the pending motions. A more thorough summary of the facts is contained in the Court's opinion and order (Dkt. # 39) ruling on FSSC's motion to dismiss.

designed by Boeing, and as part of the project Boeing needed to provide the USAF fuselage trainers (FuT) and boom operator trainers (BoT). Dkt. # 2, at 3. FSSC solicited bids for the development of the trainers and selected ATD's bids for both types of trainers when FSSC submitted its bid to the USAF. Id. at 4. The USAF awarded the contract for the development of trainers to FSSC, and FSSC and ATD entered into a subcontract for the construction of one FuT and two BoTs. Id. The subcontract was later modified to require that ATD construct one additional FuT and two additional BoTs. Id. at 7. ATD alleged in the original complaint that FSSC failed to provide data necessary to ATD to complete its work under the subcontract, and this caused delays in the completion of ATD's work. Id. at 7. FSSC sent notice to ATD that it was terminating for convenience the subcontract as to the second FuT, and it requested a settlement proposal from ATD. Id. at 8. In June 2017, FSSC solicited bids for the remaining BoT devices requested by the USAF, and FSSC asked ATD to submit a bid for a new subcontract. Id. at 9. FSSC did not award the new subcontract to ATD, and ATD claims that this violated a promise by FSSC to award future work to ATD if it lowered its price for the original subcontract. Id. at 10.

On April 25, 2019, ATD filed this case alleging two breach of contract claims (counts I and II)[2] and claims of breach of duty of good faith and fair dealing (count III), unjust enrichment (count IV), and promissory estoppel (count V). ATD filed an amended complaint (Dkt. # 19) alleging the same claims, but including additional factual allegations. FSSC filed a motion to dismiss counts II, III, IV, and V of the amended complaint, and ATD sought leave to file a second amended complaint. Dkt. ## 18, 29. The Court entered an opinion and order (Dkt. # 39) granting in part and denying in

---

[2] The breach of contract claim alleged in count I appears to be related to unpaid invoices as to FuT 1, and count II relates to FSSC's allegedly improper use of the termination for convenience clause as to FuT 2.

part FSSC's motion to dismiss and denying ATD's motion to amend. The motion to dismiss was denied as to counts II and III, but the Court dismissed plaintiff's claims of unjust enrichment (count IV) and promissory estoppel (count V). The Court determined that the parties had an express written agreement, and the alleged promises forming the basis for ATD's unjust enrichment and promissory estoppel fell within the scope of the subcontract. Dkt. # 39, at 17. The subcontract contains an integration clause stating that it "supersedes all written or oral agreements and constitutes the entire agreement between the parties hereto with respect to this Subcontract." Dkt. # 18-1, at 3. The Court found that this provision prevented ATD from pursuing claims based on an alleged oral promise by FSSC to award future subcontracts to ATD, because the alleged promise was closely tied to the price of the original subcontract and was not included in the parties' written agreement. Dkt. # 38, at 17-18. ATD asks the Court to reconsider its decision to dismiss the claims of unjust enrichment and promissory estoppel, and ATD also seeks leave to assert new claims based on FSSC's failure to disclose prior to entering the subcontract that it would have difficulty obtaining data needed by ATD to complete its work. Dkt. ## 50, 51.

**II.**

ATD claims that it recently learned that FSSC has filed a lawsuit against the United States based on allegations that the government failed to provide necessary data to FSSC, and ATD seeks to allege new claims against FSSC based on this new information. Dkt. # 50. FSSC responds that plaintiff knew about FSSC's problems in obtaining data before the parties entered a subcontract in September 2013, and the new claims alleged in ATD's proposed second amended complaint would not survive a motion to dismiss. Dkt. # 57, at 2.

Under Fed. R. Civ. P. 15(a)(2), after the opposing party has served a responsive pleading, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Minter v. Prime Equipment Co., 451 F.3d 1196, 1204 (10th Cir. 2006). The decision to grant leave to amend is within the discretion of the district court but, when leave is sought, it should be "freely given when justice so requires." Bradley v.Val-Majias, 379 F.3d 892, 900-91 (10th Cir. 2004). Leave to amend may be denied if the proposed amendment would be futile and would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Services, Inc., 175 F.3d 848, 859 (10th Cir. 1999). Denial of a motion to amend may also be appropriate if the moving party unduly delayed when seeking leave to amend and has no adequate explanation for the delay. Minter, 451 F.3d at 1206. "In the Tenth Circuit, untimeliness alone is an adequate reason to refuse leave to amend." Duncan v. Manager, Dep't of Safety, City and County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005).

FSSC has attached evidence to its response to ATD's motion to amend, and ATD argues that the Court should not consider this evidence in determining whether it would be futile to allow ATD to file a second amended complaint. A motion to amend may be denied as futile if the proposed claim would not survive a motion to dismiss, and federal district courts have consistently found that this standard precludes consideration of evidence outside of the pleadings. Jenkins v. Immedia, Inc., 2019 WL 1875501 (D. Colo. Apr. 25, 2019); BAC Local Union 15 Welfare Fund v. Williams Restoration Co., Inc., 2018 WL 5311861 (D. Kan. Oct. 26, 2018). However, the Court will consider the evidence provided by defendants to the extent that the evidence relates to the timeliness of ATD's motion to amend, because FSSC disputes that the motion to amend is based on "newly discovered" information.

4

FSSC argues that claims of constructive changes and superior knowledge can only be asserted by a contractor against the federal government, and ATD's claims against FSSC, a private party, would not survive a motion to dismiss. A claim of "constructive changes" is a claim unique to federal procurement law, and this is a claim that can be asserted by a contractor against the federal government "where a contractor performs work beyond the contract requirements, without a formal order under the changes clause, either by an informal order of the Government or by fault of the Government." Miller Elevator Co., Inc. v. United States, 30 Fed. Cl. 662, 678 (Ct. Cl. 1994). The key component of a constructive changes claim is that the government "expressly or impliedly ordered work outside the scope of the contract, or . . . the government otherwise caused the contractor to incur additional work." Id. The claim of superior knowledge is also part of federal procurement law, and a plaintiff must show that:

> (1) [it] undert[ook] to perform without vital knowledge of a fact that affect[ed] performance costs or duration, (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information, (3) any contract specification supplied misled the contractor, or did not put it on notice to inquire, and (4) the government failed to provide the relevant information.

Northrop Grumman Corp. v. United States, 47 Fed. Cl. 20, 52 (Ct. Cl. 2000). ATD argues that the subcontract incorporates certain federal regulations, and ATD argues that it is permitted to assert claims against FSSC in the same manner that FSSC may assert claims against the federal government. ATD also argues that its claims of constructive changes and superior knowledge could be construed as state law claims of breach of an express or implied contract. However, ATD makes no such allegations in its proposed second amended complaint and, as requested by ATD, the Court will limit its review to the allegations of the proposed second amended complaint in considering the futility of the proposed amendments.

The Court can find no authority suggesting that a subcontractor is permitted to assert claims of constructive changes or superior knowledge against a general contractor, and it would be futile to allow ATD to file an amended complaint adding these claims. ATD argues that the parties agreed to be bound by federal law as to matters of contract interpretation, and it should be permitted to enforce contractual provisions concerning extra work or changes to the contract. Even if this is correct, this does not support ATD's argument that it is permitted to assert claims that are reserved to the general contractor under federal law. The claims described in ATD's motion to amend are ordinary breach of contract claims and do not require ATD to resort to doctrines that apply only to contracts between a general contractor and the federal government. The proposed second amended complaint does not state plausible claims of constructive changes or superior knowledge, and ATD will not be permitted to file a second amended complaint asserting these claims.

For the purpose of this Opinion and Order, the Court will assume that the proposed second amended complaint states a fraud claim based on FSSC's alleged failure to disclose that it knew before the parties entered a subcontract that it would likely have difficulty obtaining necessary data for ATD to perform its work under the subcontract. ATD claims that it recently learned that FSSC had filed a lawsuit against the United States based upon allegations that the government failed to provide necessary data to FSSC. The theory of ATD's proposed fraud claim is that it would never have entered the subcontract or accepted subsequent modifications if FSSC disclosed that it would be unable to provide the data that ATD needed to complete its work. Dkt. # 50-2, at 23. FSSC filed its lawsuit against the United States on January 28, 2020, and ATD claims that this is the first notice it received that FSSC knew that it could not provide relevant data to ATD in a timely manner. However, the exhibits attached to FSSC's response to the motion to amend show that the parties

were aware as early as June 2013 that FSSC was having problems obtaining data for the project, and these difficulties continued as the project continued. ATD argues that FSSC repeatedly misled ATD about when the data would become available, but ATD was on notice of the key facts supporting its fraud claim in 2013 and 2014. The proposed fraud claim could have been included in ATD's original complaint, and ATD's claim that it first learned about FSSC's difficulty in obtaining data after FSSC filed its lawsuit is not credible. ATD has not provided a reasonable explanation for its delay in seeking to add a fraud claim based on FSSC's misleading statements concerning the availability of data, and the Court finds that ATD should not be permitted to file a second amended complaint asserting a fraud claim. See Minter, 451 F. 3d at 1206

### III.

ATD claims that the Court erred when it dismissed ATD's claims of unjust enrichment and promissory estoppel, because these claims were separate from the subcontract and the integration clause in the subcontract has no application to these claims. Dkt. # 51, at 1. ATD also argues that the Court failed to consider ATD's promissory estoppel claim based on the 2017 re-bidding process. Id. at 2. FSSC argues that the Court has already considered and rejected ATD's arguments concerning the integration clause, and FSSC claims that ATD is merely attempting to reformulate its claim for promissory estoppel in an attempt to avoid dismissal. Dkt. # 56, at 2-3.

The Court treats ATD's motion to reconsider under Fed. R. Civ. P. 54(b), as the underlying order is not a final order or judgment. See Raytheon Constructors, Inc. v. Asarco Inc., 368 F.3d 1214, 1217 (10th Cir.2003). The Court may call into play the legal standards applicable to a Rule 59(e) motion to alter or amend judgment. See e.g., Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand LLP, 322 F.3d 147, 167 (2d Cir. 2003). A motion to

reconsider, like a motion to alter or amend judgment, should be granted only upon the following grounds: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000); see Adams v. Reliance Standard Life Ins. Co., 225 F.3d at 1186 n. 5 (10th Cir. 2000). The Court will exercise its discretion to review plaintiff's motion to reconsider under the standards applicable to Rule 59(e) motions.

ATD argues that the Court erred when it determined that ATD's claims for unjust enrichment and promissory estoppel were barred by the integration clause in the subcontract, because the subject matter of the promises forming the basis for these claims was outside the scope of the subcontract. Dkt. # 51, at 4. ATD acknowledges that the Court considered this argument in its prior opinion and order, but ATD claims that the Court failed to consider two exceptions to the general rule that equitable claims are barred when the parties have an enforceable contract covering the same subject matter. Id. at 3-4. First, "a party can recover on a quasi-contract when the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the express contract." Interbank Investments, LLC v. Eagle River Water and Sanitation Dist., 77 P.3d 814, 816 (Colo. App. 2003). Second, "a party can recover on a quasi-contract when the party 'will have no right under an enforceable contract.'" Id. (quoting Backus v. Apishapa Land & Cattle Co., 615 P.2d 42, 44 (Colo. App. 1980)). The example provided for when the second exception may apply is that "quasi-contractual recovery may be allowed when an express contract failed or was rescinded." Id. ATD claims that FSSC promised to award ATD future subcontracts for additional devices if it lowered its price for the original subcontract, and ATD argues that this promise was outside of the scope of the parties' subcontract. Dkt. # 51, at 4.

ATD made precisely the same argument in response to FSSC's motion to dismiss, and the Court considered and rejected this argument. Dkt. # 39, at 15-18. Although the Court did not mention the two exceptions cited by ATD, these exceptions are only applicable if the conduct or promise giving rise to the equitable claim is actually outside of the contract or occurs when there is no longer an enforceable contract. The Court considered ATD's arguments that the alleged promise by FSSC to award future subcontracts to ATD was outside of the scope of the subcontract, and found that alleged promise was within the scope of the subcontract and that the subcontract contains an integration clause clearly stating that the parties had no enforceable agreements that were not contained in the subcontract. Dkt. # 39, at 17. The Court's opinion and order was not a first draft, and the mere fact that ATD disagrees with the Court's ruling is not a basis for reconsideration.

ATD argues that the Court failed to consider ATD's claim concerning an alleged promise by FSSC to award ATD future subcontracts if it submitted the lowest bid. Dkt. # 51, at 2. The Court has reviewed ATD's amended complaint and finds that the amended complaint does not contain the claim described in ATD's motion to reconsider. The claim mentioned in the motion to reconsider is a complete re-imagining of the promissory estoppel claim actually alleged in the amended complaint, which is based on FSSC's alleged refusal to pay a higher price for future subcontracts if ATD agreed to lower its price for the original subcontract. The Court did not "inadvertently" fail to consider the full extent of ATD's promissory estoppel claim, because the claim that the Court allegedly failed to consider was not actually alleged in the amended complaint. The Court finds no basis to reconsider its prior opinion and order (Dkt. # 39, and ATD's motion to reconsider (Dkt. # 51) is denied.

**IT IS THEREFORE ORDERED** that Plaintiff's Second Application for Leave to File Second Amended Complaint (Dkt. # 50) and Plaintiff's Motion to Reconsider Court's Dismissal of Plaintiff's Claims for Unjust Enrichment and Promissory Estoppel (Dkt. # 51) are **denied**.

**DATED** this 20th day of May, 2020.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE